UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

LENNY C. WHITE,                                          CIVIL NO. 09-1607 (RHK/JSM)

      Plaintiff,

v.                                                               REPORT AND
                                                                    RECOMMENDATION

SGT. JEFF NELSON and
JOAN FABIAN, Commissioner
of Corrections,

      Defendants.

JANIE S. MAYERON, United States Magistrate Judge.

      The above matter came before the undersigned United States Magistrate Judge upon Defendants' Motion for Summary Judgment [Docket No. 19]. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(a).

**I.    GENERAL FACTUAL BACKGROUND**

      Plaintiff Lenny C. White ("White"), at all times relevant to this lawsuit was incarcerated at the Minnesota Correctional Facility at Rush City, Minnesota ("MCF-RC"). In his Complaint for Violation of Civil Rights under 42 U.S.C. § 1938 against Sergeant Jeff Nelson ("Sgt. Nelson") and Commissioner of Corrections Joan Fabian ("Fabian"), White alleged that his mother passed away on September 3, 2008 and that on September 9, 2008 arrangements were made for him to make a funeral visit. See Complaint [Docket No. 1], ¶ IV(1)-(2). On September 9, 2008, an escort officer

handcuffed White behind his back and retrieved an orange jumpsuit for him to wear at the funeral visit. Id., ¶ IV(3). White claimed that the orange jumpsuit was not an established rule of Minnesota Department of Correction ("DOC"). Id., ¶ IV(4). According to White, "this became deliberate indifference when commissioner attempted to hide or suppress the material fact that discrimination was being shown to black inmates despite policy, also where Nelson's actions were not supported by policy." Id., ¶ IV(5); see also ¶ IV(7). As part of his request for relief, White has asked for an award of "monetary damages in the amount of $50,000 per offense in this cause of action." Id., ¶ IV(5).

Sgt. Nelson provided in his Affidavit that on September 9, 2008, he and Correction Officer Paul Gammel ("Gammel") were serving as escort officers to transport White outside of the facility in order to for him to visit his deceased mother. See Affidavit of Sergeant Jeff Nelson ("Nelson Aff.") [Docket No. 22], ¶ 3. The MCF-RC Watch Commander had assigned Sgt. Nelson and Gammel to transport White. Id. While preparing White for transport, Sgt. Nelson removed an orange jumpsuit from a locker and White asked what the orange jumpsuit was for. Id.; see also Complaint, p. 5 (Summary of Incident by White). Sgt. Nelson explained to White that when an offender leaves the facility on a special duty, policy requires the offender to wear an orange jumpsuit. See Nelson Aff., ¶ 3. White stated that he did not wear an orange jumpsuit while he was at the Stillwater facility, and told Sgt. Nelson that he did not want to go on the trip. Id.; see also Complaint, p. 5 (Summary of Incident by White). Sgt. Nelson informed White that people had gone to great lengths to arrange the trip, however, White again stated that he did not want to go. See Nelson Aff., ¶ 3. White was then

2

escorted back inside the secured perimeter. Id.; see also Complaint, p. 5 (Summary of Incident by White).

DOC Policy 203.220, effective April 1, 2004, provides in relevant part:

> Offenders may be permitted to leave facility grounds under staff/volunteer escort according to the following guidelines.
>
> A.  Special Duties may be scheduled to:
>
> * * *
>
> 4.  allow offenders to
>
>     a)  make deathbed visits (not allowed at private residence)
>
>     b)  attend wake/visitation/cremation. Or
>
>     c)  attend funeral . . . .

Nelson Aff., Ex. A (DOC Policy 203.220).

In addition, the Operating Guideline for MCF-RC 203.220.1-OG, effective May 10, 2006, required that "[a]ll offenders leaving the institution for medical appointments, court, etc., will be dressed in an orange jumpsuit, prior to placing on restraints." Nelson Aff., Ex. B (MCF-RC 203.220.1-OG), ¶ (C)(4).

## II.  FACTUAL BACKROUND PERTAINING TO EXHUASTION

The DOC has a grievance procedure in place that an inmate may use to grieve any issue concerning their conditions of confinement. See Affidavit of Kim Ebeling ("Ebeling Aff."), ¶ 2. Before filing a grievance, the DOC generally requires that an inmate send Kites to persons involved in the incident and then proceed up the chain of command. Id., ¶ 2, Ex. A (DOC Policy 303.100), Procedures ¶ A(1). If the informal process does not resolve the issue, then an inmate may file a formal grievance, which

3

has two levels. Id. First, an inmate must file a grievance with the correctional facilities grievance coordinator, which will be decided by the facility's warden or designee. Id., ¶ 2, Ex. A (DOC Policy 303.100), ¶ A(1), (2)(f). If an inmate is dissatisfied with the result, the inmate may initiate a grievance appeal, which is decided by the Commissioner of Corrections, the Assistant Commissioner or the Deputy Commissioner. Id., ¶ 2, Ex. A (DOC Policy 303.100), ¶ B(1), (2)(g). The appeal response is the final action. Id., ¶ 2, Ex. A (DOC Policy 303.100), ¶ B(2)(g).

The DOC has no record of any grievance being filed by White regarding the September 9, 2008 incident at issue in this case. Id., ¶ 3. As a part of his Complaint, White attached several Offender Kite Forms in which he asked for the identification of the individuals who were going to transport him on September 8, 2008, why a "kit" was needed to escort him to a funeral home on September 9, 2008, and an explanation as to why he was required to wear an orange jumpsuit. See Complaint, pp. 6-10. White also attached a letter summarizing the facts of what happened on the day in question, however, there is no mention as to whom, if anyone, it was sent, or its purpose. See Complaint, p. 5 (Summary of Incident by White).

## II.  STANDARD OF REVIEW

Defendants filed the present Motion to Summary Judgment [Docket No. 19] on July 30, 2010. On August 19, 2010, U.S. District Court Judge Richard H. Kyle issued an Order continuing the trial in this matter until 30 days after the Court issue a ruling on the present Motion for Summary Judgment. See Docket No. 27. As of the date of this Report and Recommendation, White has not filed an opposition to defendants' Motion for Summary Judgment

4

Summary judgment is proper when, drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. 56; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986). The moving party bears the burden of showing that there are no genuine issues of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). If the moving party carries its burden, the nonmoving party must point to specific facts in the record that create a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 256. The non-moving party must "substantiate his allegations with sufficient probative evidence that would permit a finding in [their] favor based on more than mere speculation, conjecture, or fantasy." <u>Wilson v. Int'l. Bus. Mach. Corp.</u>, 62 F.3d 237, 241 (8th Cir. 1995).

## III.  ANALYSIS

In support of their motion for summary judgment pursuant to Rule 56, defendants made the following arguments: (1) White's claims must be dismissed because he failed to exhaust his administrative remedies; (2) White's claims for damages against defendants in their official capacities should be dismissed because they are barred by the Eleventh Amendment; (3) summary judgment should be granted because White has not alleged sufficient facts to state a claim for constitutional violations under the Eighth Amendment and the Equal Protection Clause of the Fourteenth Amendment; and (4) the defendants are protected by qualified immunity. <u>See</u> Defendants' Memorandum in Support of Summary Judgment at pp. 5-13.

## A. **Exhaustion of Remedies**

Section 1997e(a), which was enacted in 1996 as part of the Prison Litigation Reform Act of 1995, ("the PLRA"), provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

This statute requires that prisoners must exhaust all of their available administrative remedies before they can bring a civil rights action based on the conditions of their imprisonment. "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," Porter v. Nussle, 534 U.S. 516, 524, 532 (2002), and regardless of the nature of the claim or the relief the prisoner is seeking. See Booth v. Churner, 532 U.S. 731, 741 (2001). Exhaustion under the PLRA requires "proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford v. Ngo, 548 U.S. 81, 90-91 (2006) (emphasis added). In other words, "proper exhaustion" of administrative remedies, "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Id. at 90 (quotation and marks omitted). Drawing on the concepts of exhaustion in the context of habeas corpus cases, Woodford stands for the proposition that the exhaustion requirement may not be satisfied by filing an untimely grievance or otherwise procedurally defective appeal. See Woodford, 548 U.S. at 92-93.

6

As to the purpose of this requirement, the Eighth Circuit has explained:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

Johnson v. Jones, 340 F.3d 624, 626-27 (8th Cir. 2003); see also Woodford, 548 U.S. at 89 ("Exhaustion of administrative remedies serves two main purposes. First, exhaustion protects 'administrative agency authority.' Exhaustion gives an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court,' and it discourages 'disregard of [the agency's] procedures.' Second, exhaustion promotes efficiency.") (quotation and citations omitted); Alexander v. Hawk, 159 F.3d 1321, 1324 (11th Cir. 1998) (quoting 141 Cong. Rec. H1472-06, *H1480 (daily ed. Feb. 9, 1995)) ("Congress intended section 1997e(a) to 'curtail the ability of prisoners to bring frivolous and malicious lawsuits by forcing prisoners to exhaust all administrative remedies before bringing suit in Federal court.'").

Under the PLRA, failure to exhaust the available administrative remedies is an affirmative defense, with the burden of proof falling on defendant, and not a matter of subject matter jurisdiction. Lenz v. Wade, 490 F.3d 991, 993 n. 2 (8th Cir. 2007) (citing Jones v. Bock, 549 U.S. 199, 127 (2007); see also Nixon v. Sanders, No. 06-1013, 2007 WL 2349344 at *1 (8th Cir. Aug. 17, 2007).

7

If it is established that exhaustion of administrative remedies did not occur prior to filing of the suit, both the Supreme Court and Eighth Circuit have made it clear that dismissal is mandatory. Jones, 549 U.S. at 211 ("[t]here is no question that exhaustion [of administrative remedies] is mandatory under the PLRA and that unexhausted claims cannot be brought in court"); Woodford, 548 U.S. at 85 ("[e]xhaustion is no longer left to the discretion of the district court, but is mandatory"); Johnson, 340 F.3d at 627-28 (finding that if a prisoner does not exhaust his administrative remedies before filing a complaint in federal court, "dismissal is mandatory," and even if a prisoner subsequently satisfies the exhaustion requirement while his action is still pending, the case still must be dismissed).

The formal grievance procedure adopted by the DOC prescribes a set of administrative remedies that are available to Minnesota state prison inmates. See Ebeling Aff., Exhibit A (DOC Policy No. 303.100). Pursuant to the policy, inmates must first seek to resolve their grievances informally, by sending a "kite," (i.e., a short written note), to a pertinent prison staff member. Id., Procedures ¶ A(1).

If the kite does not resolve the grievance to the inmate's satisfaction, then the inmate must prepare and submit a formal "Offender Grievance form" to the "facility grievance coordinator." Id., ¶ A(1)(a). The formal grievance is investigated by the facility grievance coordinator, who submits the results of his or her investigation to the prison warden/superintendent or designee. Id., ¶ A(2). The warden/superintendent (or designee) then rules on the grievance, and the facility grievance coordinator provides written notification to the offender of the warden/superintendent's (or designee's) decision within 20 working days from the date the grievance was logged into the

grievance database. Id., ¶ A(2)(e)-(f). The warden/superintendent (or designee) may obtain a 20-working day extension provided the offender is notified of the extension within the first 20 working days. Id., ¶ A(2)(f). If the offender does not receive a decision within 20 working days of the date the grievance was logged, or within 40 days if the offender received notice of an extension, the offender may consider the grievance dismissed and the offender may appeal the grievance immediately. Id., ¶ A(2)(g).

If the inmate is dissatisfied with the decision of the warden/superintendent (or designee), he can appeal that decision by submitting a formal Grievance Appeal form to the DOC's "central office grievance appeal coordinator" within 15 working days of the date the warden/superintendent (or designee) signed the response. Id., ¶ B(1). That person will "[d]etermine the appropriate method of investigating the grievance and submit the investigation results with recommendation to the appropriate assistant or deputy commissioner." Id., ¶ B(2)(d). The assistant or deputy commissioner then makes a final decision on the grievance. Id., ¶ B(2)(e). The assistant or deputy commissioner will respond to the appeal within 20 working days from the date the appeal was logged, and may obtain a one-time 20-working day extension, provided the offender is notified of the extension within the first 20 working days. Id. If the offender does not receive a decision within 20 working days of the date the grievance was logged, or within 40 days if the offender received a notice of extension, the offender may consider the grievance appeal dismissed and the offender may report the matter to the Commissioner for a resolution. Id., ¶ B(2)(f). Once a grievance has been resolved by the assistant or deputy commissioner or the Commissioner, there are no further

appeals. Id., ¶ B(2)(g). The policy explicitly instructs the offender to "follow the chain of command and contact only one staff at a time." Id., p. 1.

The grievance policy also permits offenders who have been threatened or are in danger to submit their complaint directly to the central office grievance appeal coordinator for response by the assistant or deputy commissioner. Id., ¶ A(3). Under these circumstances, all such decisions processed by the central office are final and there is no second level of appeal. Id.

In summary, the administrative remedies provided by MNDOC are fully exhausted for purposes of § 1997e(a) only when an inmate completes all of the prescribed steps of the MNDOC Grievance Procedure, and receives a final decision from the assistant or deputy commissioner or Commissioner.

In this case, the DOC has no record of any formal grievance being filed by White regarding the September 9, 2008 incident at issue in this case. See Ebeling Aff., ¶ 3. This evidence was not contradicted by White. To the contrary, as a part of his Complaint, White attached several Offender Kite Forms including two September 25, 2008 Kite forms in which he asked for the identification of the individuals who were going to transport him on September 8, 2008. See Complaint, pp. 6, 10. On September 25, 2008, White sent a Kite to Sgt. Nelson asking why a "kit" was needed to escort him to a funeral home on September 9, 2008. Id., p. 9. Sgt. Nelson replied that a "Kit" was a set of restraints that inmates were required to wear when transported off grounds. Id. On October 1, 2008, White sent a Kite form to Sgt. Nelson asking him in general what the orange jumpsuits were and when they were to be use. Id., p. 7. White also attached a letter summarizing the facts of what happened on the day in question,

including the requirement of wearing an orange jumpsuit, however, there is no mention as to whom, if anyone it was sent, or its purpose. Id., p. 5. In his Complaint, White admitted that he corresponded with Nelson and a Captain Wilmes in person and through the Kite process. Id., ¶ II(C). According the White there was no resolution, as Captain Wilmes stopped replying to his Kites and his grievance was never answered. Id., ¶ II(D).

Upon review of all evidence and exhibits submitted by the parties, the Court finds that White did not file, let alone appeal any of his grievances, and therefore, did not exhaust his administrative remedies against the defendants concerning his complaint that he was wrongfully required to wear an orange jumpsuit to his mother's visitation.

Having determined that White has not exhausted all available administrative remedies as to any of his constitutional claims against the defendants, this action must be dismissed. The only remaining issue for this Court to consider is whether the action should be dismissed with or without prejudice. Here, because the time has run on White's ability to grieve his complaints against the DOC Defendants, Woodford makes clear that the remedies are no longer available. Under the DOC's policy, an offender must appeal within 15 working days of the date the warden, superintendent or designee signed the response to the offender's grievance. See Ebeling Aff., Exhibit A (DOC Policy No. 303.100), ¶ B(1).

The deadline for White to appeal has long passed. Thus, because White can no longer exhaust his claims, he has procedurally defaulted on them and his suit is precluded forever and must be dismissed with prejudice. See Woodford, 548 U.S. at 92-93; Johnson v. Meadows, 418 F.3d 1152, 1156 (11th Cir. 2005) (noting the "policies

favoring exhaustion," court held that the PLRA contains a procedural default component where an inmate fails to avail himself in a timely fashion of the institution's administrative process); Berry v. Kerik, 366 F.3d 85, 88 (2d Cir. 2004) ("failure to pursue administrative remedies while they were available precluded [the plaintiff's] federal lawsuits, and they were properly dismissed with prejudice."); Wardrick v. Marberry, NO. CIV.A. 06-216-ERIE, 2007 WL 4180693 at *6 (W.D. Pa. Nov. 20, 2007) ("Plaintiff has failed to exhaust his administrative remedies. In addition, Plaintiff is foreclosed from re-submitting his appeal to the General Counsel's Office because he failed to do so within the required time period. As a result, Plaintiff has procedurally defaulted on his claim and this case should be dismissed").

In conclusion, in the face of specific evidence that White did not follow the required administrative remedy procedure to assert his claims against defendants, the Court finds that he has failed to exhaust his administrative remedies and his case against the defendants must be dismissed in its entirety with prejudice.

### B. Claims for Damages against Defendants in their Official Capacities

Even if this Court had determined that White had properly exhausted his claims against defendants, these claims would still have to be dismissed based on the Eleventh Amendment. The Eleventh Amendment states that the "judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state." Under the Eleventh Amendment, federal courts do not have subject matter jurisdiction over a claim against a state for damages that has not consented to the suit. Seminole Tribe of Florida v. Florida, 517 U.S. 44, 64-65 (1996); Roberts v. Dillon, 15 F.3d 113, 115 (8th

Cir. 1994). This immunity extends to state officials as well since "a suit against a state official in his or her official capacity is a suit against the official but rather is a suit against the official's office [and] is no different from a suit against the State itself." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). When a lawsuit is barred by the Eleventh Amendment, the case must be dismissed for lack of subject matter jurisdiction. Seminole Tribe, 517 U.S. at 64-65.

In his § 1983 Complaint, White included the following defendants: "SGT, Jeff Nelson, Commissioner of Corrections, Joan Fabian, ET Al." White did not specify in what capacity he brought suit against defendants. Absent specification, it is presumed that defendants are being sued in their official capacities. See Egerdahl v. Hibbing Comty. Coll., 72 F.3d 615, 620 (8th Cir. 1995) (concluding that a complaint must contain a "clear statement of [the] wish to sue defendants in their personal capacities"); Lopez-Buric v. Notch, 168 F. Supp. 2d 1046, 1049 (D. Minn. 2001) (same).[1]

White has brought suit against the defendants in their official capacities for monetary damages, however, the defendants have not consented to such a suit. The Eleventh Amendment bars White's claims against defendants and this Court lacks jurisdiction over such claims. Therefore, defendants' motion for summary judgment should also be granted on this basis.

## IV. CONCLUSION

Based on the undisputed record, White has failed to exhaust his administrative remedies as required by the PLRA, and this Court lacks subject matter jurisdiction over

---

[1] If anything, the fact that White included the defendants' positions, within MCF-RC and the DOC, in the caption of his Complaint suggests that he was suing defendants in their official capacities.

his claim for relief. As such, for all of the reasons stated above defendants Motion for Summary Judgment should be granted.

## V. RECOMMENDATION

For the reasons set forth above, and based on all the files, records, and proceedings herein, IT IS HEREBY RECOMMENDED THAT:

1. Defendants' Motion for Summary Judgment be **GRANTED**.

2. Plaintiff's claims be dismissed with Prejudice.

Dated: January 14, 2011

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

## NOTICE

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **January 28, 2011**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.